May it please the court, David Minkin along with Jesse Smith on behalf of County of Kauai. I will reserve two minutes for my closing while I am splitting my time with the intervener. So I'll go about a little over five minutes then defer to Mr. Achetoff on behalf of the intervener. Thank you sir. Good morning your honors. What we have here is the district court's erroneous conclusion that Ordinance 960 is preempted by state law. What's significant is that the companies, the plaintiffs, initially sued to invalidate the statute based upon federal preemption as well as state preemption. The hearing determined that there was no federal preemption. Afterwards the court then made a determination that there was implied state preemption. One of our issue was disposed of. This matter should have been turned over via certified question to the Hawaii Supreme Court because it's an important issue for the entire state of Hawaii. As you see by the calendar today, it is not just the county of Kauai, it's the county of Maui and it's the big island, the county of Hawaii. That issue regarding whether it was something appropriate, whether it was preempted by state law, is something that the Hawaii Supreme Court, the district court, should have delegated it and certified the question over there. Why is, but I'm going to go back to that momentarily, what do we have? Why was it erroneous? Because the district court made a determination that Ordinance 960 conflicted with the state statutes. It did not. The erroneous conclusion that the state regulations created a comprehensive mechanism for regulating legislature's intent that the state law be both uniform and exclusive. That's not the case. We had a statute, an agricultural statute, that covered some areas. What did it cover? It covered labeling and directions for use. It covered reports and somehow the fact that the state agricultural statute covered these areas but could not conflict with federal law FIFRA under 48, this district court made a determination that it was comprehensive, that it was uniform, and that it was... Well, correct me if I'm wrong, but the analysis regarding the pesticides was under one statutory scheme and then the reporting was under another, right? Correct. Alright. So arguably, the district court could be correct on the pesticides and wrong on the reporting or vice versa, right? It's not just one size fits all, right? Correct, but our position is that the court looked at it, didn't go into great detail as it should have, and looked at what was the intent, what was done, where it was done, and the specifics. The appellees argue that, well, the case law is there, the court did what it needed to do, but as this court knows, in the Richardson case, there was a certified question. The case law had existed from prior cases, but what did the Richardson case show? The Richardson case showed that you needed to look beyond, you needed to look at legislative intent, you needed to look at exactly what was taking place and not morphing it in and saying, well, because there's an issue with labeling and areas and then after the fact, but the county was doing something different. It wanted to do something prospective, it wanted to do something at the forefront, whereas what the state statute allowed was something after the county was looking at. The county's authority was derived from its police powers under HRS 46-1. Well, but if you look at the Hawaii Pesticides Law, it expressly states the legislative goal of uniformity, if you look in HRS section 149A through 19 and HRS 149A-23. In light of those provisions, how can it be said that the state law does not disclose the legislative intent of the state's regulation of pesticides to be uniform or exclusive? I believe that what's there, yes, that language is there, but if you look at it closely as to what was really being done and what was being sought by the county and the state at that level, there was delegation. There was an ability under the police powers and more importantly, under the constitutional provision of the public trust doctrine that mandates no matter what statutes exist, no matter what rules and regulations exist, the... And this is the Kauai Springs case, which I had the pleasure of arguing before the Hawaii Supreme Court, said that the counties have that duty and responsibility no matter what else, to protect its people, to protect its resources going forward. That's the issue, that's what's needed to be... But what happens when that conflicts with the state law? The constitutional provision? Well, you're saying that the county, what they had an obligation to do it. Is that what you're arguing? Right. All right. But I guess I'm kind of dovetailing with what Judge Callahan asked you, because it seems like the Hawaii Pesticides Law and then the rules that the State Department of Agriculture has enacted pursuant to it are pretty thorough when it comes to regulating these pesticides in the state. And it does indicate that the legislature intended for this scheme to be comprehensive and exclusive. So I don't know if I'm asking the same question, but it's right around there. I understand your question, and I don't believe that it shows that intent. Because after Mortier, what we do know is that a number of states passed laws, basically expressly preempting the municipalities from doing what Kauai wanted to do here. That failed here in Hawaii. The State Department of Agriculture pushed for that statute, and it did not pass. What does that tell us? The legislature wasn't willing to go that far. The legislature wasn't willing to preclude the local municipalities on each of the islands that have a unique circumstance to basically, under the public trust doctrine and police powers, take care of their own. So you're saying Mortier supports your position? Yes. Okay. Well, let me play the devil's advocate here with you. In Mortier, the Supreme Court concluded that FIFRA does not preempt state and local pesticides laws because FIFRA leaves substantial portions of the field vacant, including an affirmative permit scheme for the actual use of pesticides. Ordinance 960 provides for an affirmative permit scheme for the use of restricted pesticides, and it also regulates the sale, transportation, and disposal of pesticides. Why doesn't it fall that under Mortier's logic, Ordinance 960 fully occupies the field of pesticides regulation? I don't think that it does, because I don't think the state statute... Well, I don't think so, but that's not... Can you be a little more specific on that? I believe that the state statute doesn't encompass everything. It's not uniform. It's not thorough enough. It's not exclusive based upon the statute. Based on what authority? I mean, just your review? I mean, does somebody disagree with you on that? Based upon the police powers, based upon the public trust doctrine, the constitutional provision. And I realize I've gone past my time, and I would now turn it over if... I have a question. Who's talking on reporting, the reporting part of it? Are you talking on that? I would be, yes. Okay. With the Chief's permission, can I ask a question on that? Okay. The annual reporting requirement imposes an obligation on commercial growers of GE plants, the violation of which is subject to civil and criminal penalties. The requirement, thus, is coercive and substantially involves the county in the regulations of GE crops. Assuming that we were to find that Hawaii's state law impliedly preempts a county ban on GE crops, wouldn't it follow that Ordinance 960's crop reporting requirement is also preempted? And I'll defer to Mr. Atchitoff because it's on the GE reporting. I'm sorry. Oh, okay. Mr. Atchitoff, we'll give you plenty of time. Hold on. I'll defer to him on that. Okay. All right. I just wanted to... I thought I was supposed to ask you. Thank you. Okay. Thanks. Very good. Thanks for your argument. We'll give you some time for rebuttal. Now, Mr. Atchitoff, nice to see you again. May it please the court, Paul Atchitoff, appearing on behalf of Defendants Intervenors, Kamakani Pono, Surfrider Foundation, and Pesticide Action Network North America. I'd like to reserve two minutes for rebuttal while I address what's been referred to as the reporting requirement, Ordinance 960's provision requiring annual disclosure of what genetically engineered crops have been grown and where they have been grown in general terms. And the provision was put there in the ordinance because of the potential for harms that this court and Center for Food Safety versus Vilsack acknowledged may occur as a result of growing genetically engineered crops, including transgenic contamination of non-genetically engineered crops. As my colleague, Mr. Minkin, pointed out, the... Is this consistent, what you just said, with state policy? I mean, the purpose... I'm just trying to figure out, is the purpose of requiring annual public disclosures of GMA use, you just stated right now what you thought the reason was for pursuing that. And I'm trying to figure out, is that consistent with state policy? What's your... I'm not aware of any state policy that it's inconsistent with. The state policy, if we are... If we want to look at, for example, the Constitution of Hawaii, Article 11, Section 3 provides the state shall conserve and protect agricultural lands, promote diversified agriculture, increase agricultural self sufficiency. These are policies of the state, all of which are promoted by this provision. Let me ask it more specifically, because it appears that the legislature has given the Department of Agriculture the authority to designate and restrict harmful plants. So, I guess my question is, wouldn't the GMO disclosure requirements of the ordinance interfere with that and constitute a regulation of a plant that the department has not determined to be harmful and potentially be in a policy or law or regulation that gives anybody a right to grow whatever they want, wherever they want, whenever they want? There is no such right, there is no state policy. You are certainly correct that the Department of Agriculture has the authority to designate or restrict harmful plants. The question here is, is that authority exclusive? Certainly, the Department of Agriculture has broad authority, but broad authority is not by any means the same as exclusive authority. It conflicts potentially with... If the Department of Agriculture were to enact some regulation or do something that was inconsistent with this, then there might be an argument there. But there is no such action, there is no such regulation, there is nothing that this ordinance provision... But doesn't it occupy the field? No, it certainly does not occupy the field. I guess so, I'm struggling with this too. We don't conference until after we come, so I don't know what my colleagues think. We don't make a decision until after we hear an oral argument, and we don't always agree. But that being said, let's just assume that if the court were to find, and I'm just... This is hypothetical, that regarding the pesticides, you lose. But then we look to the reporting. Isn't that just putting your nose under a tent where you can't do anything anyway? It just seems like, okay, so what are you going to do with these reports? Is that just allowing you... What you can't do through the front door, coming through the back door, and then you're going to try to regulate areas that if we were to say that you can't? All this provision does is require someone who... No one is being prohibited from growing anything by... Okay, but if you don't like the reports, then are you going to fine them for not liking the reports? That's not what the ordinance says. The ordinance just... What if you don't think it's complete? Then I get to set up a whole committee that looks at reports and say, well, I don't think it's complete, we're going on the property, and I don't think you're reporting accurately. With due respect, that provision, if it were to exist, is not the provision that's in the ordinance, it's not before the court. All we have is a very simple provision that says, we want to know what you grew last year and where you grew it. That's all. And there is nothing in Hawaii law or policy or regulations that in any way suggests that this conflicts with any right that anybody has. What do you do with that information? That information would be useful, for example, if there were a genetically engineered corn that was disclosed to be grown in a certain general area. Now, corn is wind pollinated and it can pollinate other corn at substantial distances, depending on wind conditions. I might be a farmer of organic or simply conventional non genetically engineered corn and I want to know, can I grow my corn here without the concern for transgenic contamination that may have an economic impact on me, because my customers don't want genetically engineered corn. That's what it would do. And it does not in any way impair the ability of the genetically engineered corn grower to grow what he or she wants wherever he wants. So turning to the pesticides provision of the state law, why don't you describe why you don't think that the state law occupies the field in terms of pesticide regulation? Well, it doesn't cover what the... It is not comprehensive and it is not exclusive. The point was made that the legislative history refers to the objective of making the law uniform. But as the Hawaii Supreme Court said clearly in the Heurope case, a law can be comprehensive and uniform and yet still not exclusive. And for implied preemption, the critical determination to be made is that the legislature clearly intended that the state law be the exclusive legislation applicable to the relevant subject matter. So mere uniformity is not the issue here, nor would it be if the court were to find that it were even comprehensive. But it's not comprehensive. There's nothing in the pesticide law that governs any of the provisions in the ordinance, such as buffer zones. There simply isn't. That's why the ordinance was enacted, because the state law was not adequately protective. If the state wanted this to be exclusive, it had every opportunity to do so. As Mr. Minkin pointed out, there was a bill in front of the legislature specifically advocating express preemption of local regulation of pesticides, and the legislature declined to enact it at the very same time when, in the wake of the Mortier decision, dozens of states around the country did incorporate express preemption provisions into their pesticide law. So I believe that that does give some indication of legislative intent not to be exclusive. Any further questions? Thank you. We'll give you some time for a poll. Thank you. Good morning, Your Honors, and may it please the court. I'm Chris Landau, and I'm here today to address the state preemption issues in this case, and I'll also be addressing those issues in the Big Island case, which is the next one. With me today at council table is Marjorie Bronster, who will address the certification issue and any other questions that the court might have. I'd like to start out, if I could, with a general observation here. The issue in this case isn't whether pesticides and GE plants should be regulated or what those regulations should be. The only question here is the who does the regulating. Under current Hawaii law, the answer to that question is clear. It's the state, not the individual counties. There may be some separate federal law preemption issues, which we'll hear about in a moment, but as between the counties and the state, with respect to both pesticides and GE plants, the state has comprehensive schemes in place. And so there is what we would, in the federal context, call field preemption there. In Hawaii, it's more commonly called a comprehensive statutory scheme preemption. That is distinct under the Richardson case, which is the seminal Hawaii Supreme Court case that very clearly lays forth these legal standards, from conflict preemption. And I think a lot of the answers that you've heard this morning from the other side, when you've asked in various forms, with respect to both pesticides and GE plants, why aren't these schemes, state schemes, comprehensive and in a sense preempt the field, you've heard answers along the lines of, well, there's no conflict. But that, of course, is conflict preemption. That's not comprehensive statutory scheme or field preemption. So I'd really like to address both of those areas. So do you concede then that there's no conflict preemption? No, there actually is conflict preemption of some specific points. In fact, there is conflict preemption, let's say, with respect to testing. Let's just talk about that for a little bit, if you don't mind. And then I understand the occupy the field argument. Is broader. But unlike the Maui and Hawaii County ordinances, this ordinance, I think, in this case, doesn't seem to ban or prohibit anything. Instead, it simply says that if you're going to use pesticides and GMOs, you need to make public notices about it. And how is that inconsistent with state law? Well, again, with respect to pesticides, it specifically does say you may not use pesticides or you may not even grow any plants in these buffer zones. So on that score, there is that. Then there are notification requirements. And again, let's keep in mind, Your Honor, that the notification requirements are incredibly draconian, that the penalties here are up to one year in prison, plus fines of, I think, $25,000 or $50,000 a day per violation. So the county has really gone to town here. And when I answered your question before, we think there are some specific conflicts between... There are conflicts, at least with the ban provisions. I realize Kauai is not a Let's say notification of GE plants, because we have notification of pesticides, we have notification of GE plants. On the GE plant side, there's a real concern of vandalism of the farmers who are forced to identify where in their fields they are using GE plants. There are concerns about espionage, people coming and actually digging up these seeds to get the seeds. Okay, but that is that... All right. I understand you're stating the annual crop reporting requirement, or is that the... Because I see that you have two separate things to analyze here. You have the pesticides component, and then you have the annual crop reporting requirement. Yeah, and maybe just to be very clear, because... And I find the pesticide argument, I'm just speaking for myself right now, that it's clearer to me that's a stronger argument than the annual crop reporting requirement. Sure. I think because what HR section 141-1 subsection 8 recognizes local governments may research and evaluate local agricultural injuries. Doesn't this provision confirm that ordinances 960 crop monitoring requirement and EFAS provisions are not preempted under state law? And with this annual crop reporting, I asked over there is, are we just putting a nose under the tent where you don't belong, or would it really interfere? They're just saying, all you have to say is what you're growing. Let's just try to keep the pesticides for a moment separate from the... Yes. Plants. On pesticides, I couldn't agree more with, at least the sentiment you're expressing, that we have a comprehensive scheme. We have a whole chapter of the Hawaii revised statutes, chapter 149A, that governs every aspect of pesticides. It governs use, labeling, distribution. And it actually, I think, Your Honor, you might have made this point earlier. It has a cooperation provision that specifically uses the word uniformity. There, that's 149A-23. And it says, we authorize the state agencies to coordinate with... The State Department of Agriculture to coordinate with other state agencies and federal agencies. There's not one word about the counties. You would think if the state, which, after all, is the source of authority of everything the county does, contemplated that there would be some role of the county here, the very cooperation provision in the pesticide law would say, and you can coordinate with local counties in that. That is incredibly powerful evidence that... And again, we're only talking about pesticides right now, that there was no role contemplated for the counties in pesticide regulation. And one point I wanna just emphasize also, it's a general point. We are all, I think, used in federal court to thinking about preemption issues with independent sovereigns on the state side and the federal government not giving them that authority. In Hawaii, it's the opposite. Every iota of authority the county has comes from the state. So there's... The question here really is, does it make sense to think that when the state is creating this comprehensive mechanism without any reference whatsoever to a county role in terms of either saying the county may regulate, may do X, Y, and Z, or saying that the state standards are minimum standards, that they would have wanted basically circumvention of this elaborate state scheme? So again, I think with respect to pesticides, it sounds like your honor at least is... Don't assume anything yet. I'm not... Okay, fair enough. Well, why don't you answer a question on the reporting part? But that... Yeah, yeah, okay. So let's now go to the GE side of the house. On the GE side of the house, there are similarly comprehensive schemes regarding allegedly or potentially harmful plants, which give the Hawaii Department of Authority incredibly broad... Department of Agriculture, excuse me, incredibly broad authority to regulate allegedly harmful plants. You all might have had to fill out a form, I suspect you did when you came into the state, about whether you're bringing any plants or seeds. I'm not aware of any other state in the union that requires you to come in. This is an area, potentially harmful plants and seeds, of extreme concern to the state of Hawaii. And this is not an area that they're kind of like, well, whatever, anybody can do whatever they feel like. There's an extremely comprehensive scheme that gives authority specifically to the state agencies, and there's absolutely no contemplation of any county role in addressing harmful plants. In fact, the... Even if the county has some concern based on its knowledge of local needs. You're right. And yes, and the answer is, if they have those concerns, the State Department of Agriculture is headed by a board. On the board is a representative of each of the major islands. So the county of Kauai here has a representative on the board. The fact that the county participates at the regulation at the state level is incredibly powerful evidence that there wasn't supposed to be some separate body of regulation. Another indicia of exclusivity, your honors, is the fact that there are boards, there's a pesticide board and there's also a harmful plants board under... The pesticide one is an advisory board of experts. And the pesticide one is at 149A-51, and it's 158-10 on the harmful plants side. Right, but let's assume if you don't... Okay, let's... So if all you have to do is you report what you grow, I mean, how are local areas supposed to... Maybe they have to go to the state and complain and say that this GE is coming over on my crops and I'm growing organic and all of that, that they can't do that locally. But how do they ever have the information if they don't know what anyone's growing? I think, your honor, the point is, if they feel they need information, reporting is a form of regulation. You can exercise regulatory authority in many ways. For instance, if the Feds want to regulate cigarettes, they can say, well, you must report your sales of cigarettes to minors. They can say, we ban that. To suggest that somehow reporting requirements are not regulatory, I think, is to blink reality. And I think it kind of goes to a point you made earlier, that how are you supposed to use reporting as distinct from the rest of the state? Reporting requirements are part and parcel of a regulatory scheme. So there's absolutely nothing in the framework of Hawaii state laws that govern potentially harmful plants that suggest any reporting role for the counties. If the state wants to impose reporting requirements, God bless them, as long as it's consistent with federal law and constitution. They have limited resources, and so it could be, their argument would be, that they need the help of the counties on certain things. The county can't do anything about it, but then if people know, then they go to these other state boards. Well, it could be, but there's nothing in state law that actually says that or suggests that. And to the contrary, the general cooperation provisions in 141 don't talk about cooperation with the county. They talk about cooperation with other entities. Here it is, hold on, I'm flipping to it. Encourage cooperation with Agricultural Extension Service and Agricultural Experiment Section, University of Hawaii, and private persons organizations who work on experimental or educational character. There's nothing that suggests that the Department of Agriculture of the state, in any of these state statutes, should coordinate or consult or that the counties have any power in this area. Let me ask you this then. What state law, if any, does the annual crop reporting requirement interfere with? Well, to the extent you're asking that interfere with, you're asking a field preemption argument that this field... I guess your answer is it doesn't conflict? I think there is no conflict on the reporting requirement front, but again, that is not our argument. No, no, I think the question was, does it conflict? Yes, that is correct. And then further, it seems like your answer to what's the harm in reporting or allowing reporting requirements by the counties is that it's, in your view, it's a regulation. Well, it's a regulation, and I think there's very specific harms to the farmers. As I mentioned, there's vandalism harms of saying, we are planting... The reporting requirement here is not some innocuous thing. It says you must identify specifically what plot of land you are putting which genetically engineered plant, and that opens the farmers up to vandalism concerns, which are very real. This is not hypothetical. This has happened. To espionage concerns, again, this is not hypothetical. This has happened. There have been agents from other countries that have come and dug up seeds in fields, and again, there's riparian penalties of... Regardless of that, the state could require that. Yes, and that's a different kettle of fish. These harms are sort of beside the point, but I can go to question of power. I'm sorry, I thought that the point was more to say... Excuse me, Your Honor. No, no, I think Judge Thomas is following up correctly in that, I mean, you're giving reasons why you would argue to the state or the county not to impose reporting requirements, but I'm trying to figure out how does it intersect or does it, because it seems like it more supplements than it intersects or conflicts or somehow is part of the state regime. Supplements, conflicting, that's... It's a cohesive regulatory regime, Your Honor. We're talking about a comprehensive statutory scheme. There are rule-making requirements. 150A-9 allows the state to pass all rules about potentially harmful plants, and these quarantine requirements are not just at the border. They're also allowing people subsequent to the entry to go after restricted plants. If the state feels that more regulation or more notification is appropriate, it's up to the state. There's a unified regime at the state level. The fact that the state doesn't have these requirements is a pretty good indication that the state doesn't feel it's appropriate. Everybody here who might want those requirements is free to go to the state and say, we should have these, and there's no question that the state has that power, except insofar as it may be preempted by federal statute or constitution. I see I'm running low on my time. Unless there's further questions, I'd like to yield to my colleague, Ms. Bronster. Certainly. Thank you, Your Honor. May it please the Court, I'm Marjorie Bronster on behalf of the appellees, and I'm here to just briefly discuss two matters that had come up. The first one was the question of whether or not this matter should be certified to the Supreme Court at State of Hawaii. And Mr. Minkin argued that this should be certified to the Supreme Court because it's important, but that is not the test. The test is whether or not there is state law that is determinative of the case, and whether there is no clear controlling precedent in Hawaii. And we believe that the test fails on both of those points. First, the Richardson case, which both sides have cited to you, and both was a certified question in and of itself. So to take a suggestion that because you have to apply established Hawaii law to a different set of statutes, that would suggest that every case should be certified. And we believe that the Court is well qualified to answer this question based on the long list of Hawaii Supreme Court precedent with Richardson, which was subsequently and recently in Ruggles, where the Court went through and said, it's clear there is a state preemption test that can either be a conflict or based on the comprehensive regulatory scheme. And for that reason, Your Honors, we believe that certification would not be appropriate. It would not shorten these issues. In fact, it would result in additional delay. And there are a lot of other issues that remain. There are 10 other counts in the underlying case that would have to be addressed after this. So it would not be appropriate. But I think, you know, Richardson sets forth the test, and the other cases do. The only question is whether or not they're in a better position to apply Hawaii preemption tests than we are. Well, I think that the problem here is that the test has been established and stated. No question. And there's no question that it's clear. The only question is whether or not the court below got it right. And I believe that the reason that they're now asking for a certification is not because there was an abuse of discretion below, but because they didn't like the way the court came out. So we believe that the court is well-equipped to answer this. And frankly, all of the courts, the lower courts in the state, that have gotten it right. The Supreme Court of the state of Hawaii has routinely said, OK, here's the test. And the outcome has been affirmed in virtually every case. With respect to the public trust issues that were raised, I think that there has been a suggestion that the public trust gives the counties more rights than it does. The public trust doctrine is an obligation of the state and the counties. And in everything that the county is authorized to do, whether it is issuing permits or whether it is issuing involved in runoff erosion control, when the county has responsibility, it is supposed to consider the public trust in meeting those responsibilities. It does not give them independent responsibilities, nor does it state where the allocation is between state and county responsibility. And we believe that the other arguments about preemption would answer those questions. Thank you, Counsel. We'll give you three minutes for rebuttal, and we'll give you three minutes as well. Thank you, Your Honors. Counsel read to you a section about cooperation under the statute, and that was section 149A-23, and read to you that the department may enter into agreements with any other agency of the state or any agency of the federal government for the purpose of carrying out this chapter and securing the uniformity of the rules. And made a big point about, well, the county is not mentioned. What Counsel didn't read to you was section 149A-35, cooperation, which talks about the department is authorized and empowered to cooperate with and enter into agreements with any agency of the state, comma, the federal government, comma, or any other agency for the purpose of carrying out this chapter. We believe that that allows the county to do what it did. Also, what else? Notwithstanding the position that the public trust doctrine doesn't allow certain things to go on, public trust doctrine imposes on counties significant affirmative duties to protect and conserve those public trust resources, which include land, water, air, minerals, and energy sources, Kauai Springs. Also, Waiahole. Also, Ordinance 960 is intended to protect land, water, and air. So it supports, the public trust doctrine supports the county's role in regulating pesticides. And the duty is imposed by the Hawaii Constitution regardless of any specific statutory authority. That's what Kauai Springs says. Laws may be here. There may be delegations of powers. The Constitution, according to the Hawaii Supreme Court in Kauai Springs, basically said, it passes through to you, the counties, no matter what exists at the county, state levels, you have an affirmative duty to protect the public trust. As to the issue of certification, the law was settled as to preemption with Kauai citizens and Anamizu, but what happened? The court, the question was certified to the Hawaii Supreme Court. Why? Because it was something that was out there that was new and novel that hadn't been discussed. There was no authority at the Hawaii Appellate Court level dealing with these issues. This issue dealing with pesticides and GMOs has never been ruled upon by the Hawaii Supreme Court. It is something that needs to be ruled upon. And this issue, I realize, when we argue certification after the trial court made its determination, it's an abuse of discretion. But that power is also invested with you, Your Honors. Thank you. Thank you very much. Put on three minutes. Your Honor, everybody seems to be talking about Richardson as being the law, but the lower court here clearly ignored what Richardson had to say about field preemption. And what the appellees have done instead is simply wave their arms and say it's comprehensive, it's comprehensive, it's exclusive. It's not under Richardson. Under Richardson, the court must find a statute covering the same subject matter as the ordinance. There is no state statute here governing the subject matter of the ordinance. And I'm talking here specifically about disclosure of genetically engineered crops. There's nothing. There's not a single state law anywhere close. The statute not only has to deal with the same subject matter, but it needs to be comprehensive, leaving no room for other regulation. There is no such comprehensive statute leaving no other room. And even if that existed, it would still have to be exclusive. The court did not find any such law. Instead, what the court did with respect to this provision was to point in the direction of a number of different laws, the quarantine law, the noxious weed law, which the court admitted did not address disclosure of genetically engineered crops. And in fact, they don't deal with disclosure of any crops. And none of them is comprehensive. None of them is exclusive. And the court said, well, but there are various sort of harmful plant laws out there. That's not what Richardson did. In Richardson, the court looked at an ordinance involving lease-to-fee condominium conversions, looked at at least six different laws that the Richardson court said related generally to the subject matter of the ordinance, went through each one individually, and said, you know what? This is close. But it is not exactly what the ordinance deals with. And it ticked them off and said, you know what? Not one of these actually has the same subject matter. Therefore, none of these is comprehensive. And none of these impliedly preempts. The same result we get if we look at Hurop or we look at Stallard. The court does not define same subject matter the way this court did by saying, oh, well, it's really just potentially harmful plants. What the courts have consistently done is say that subject matter means subject matter, not some subject matter arguably conceptually similar on some level, even though the law doesn't actually cover it, which is what the court did here. With respect to the county's power and this issue of, you know, is it relevant that there is a conflict or not a conflict? It's very relevant. The police power specifically says that the county has the power to enact an ordinance on any subject it deems necessary to protect health, life, and property unless it's inconsistent with or defeats the intent of a comprehensive state statute the legislature intended to exclusively regulate that subject matter. And in fact, if you look at the two cases that have actually found implied preemption in Hawaii, Anamizu and Citizens Utilities, both of them dealt with ordinances that did conflict. And when Richardson distinguished both of them, the Richardson court specifically said that these conflicted and the ordinance in Richardson did not. So although conflict and implied preemption are distinct doctrines, there's no question about it. They are not so independent as counsel implies. There is more of a sliding scale, and when courts, the more a court is likely to find conflict, the more it's likely to find implied preemption, and the opposite is also true. Thank you, counsel. Thank you. Case just heard will be submitted for decision.
judges: Thomas, Callahan, Murguia